# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

MISTY MINA JONES,

            Petitioner,

vs.

DIANN WILDER-TOMLINSON,

            Respondent.

No. C06-4060-MWB

**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS**

_____

      This matter is before the court on the petition for a writ of *habeas corpus* filed by Misty Mina Jones pursuant to 28 U.S.C. § 2254. (Doc. No. 3) The respondent Diann Wilder-Tomlinson has responded to the petition (Doc. No. 5), and has submitted relevant state court documents (Doc. Nos. 6, 20-2 & 21) The parties have briefed the issues. (Doc. Nos. 19, 20 & 22) On March 6, 2008, the Honorable Mark W. Bennett referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), for review and the submission of a report and recommended disposition of the case.

## *Factual and Procedural Chronology*

      On the afternoon of August 22, 2003, Jones was a passenger in a car driven by a friend, Bobbi Jo Linehan. Sioux City Police Officer Dane Wagner stopped the vehicle when he noticed a crack in the windshield that he believed crossed through the driver's line of sight. Linehan was arrested for failing to have a driver's license, and on an outstanding Illinois warrant. Officer Wagner asked Jones to get out of the car, and then he searched the car incident to Linehan's arrest. He located a small, silver scale. Upon questioning by the officer, Jones stated her father used the scale to weigh food. Linehan, questioned separately, stated the scale "looked like a scale used to weigh marijuana." Both women denied ownership of the scale. Officer Wagner disbelieved Jones's explanation about the

scale's use, and because the scale was located in the vehicle in proximity to both women, Officer Wagner arrested both of them for possession of drug paraphernalia in violation of the Sioux City Municipal Code. *See* Doc. No. 6(f), Transcript of Suppression Hearing, at pp. 9-21; Doc. No. 20-2, Habeas Appendix ("Habeas App."), Ruling on Motion to Suppress in *State v. Jones*, No. FECR051916 (Woodbury County Dist. Ct. Aug. 12, 2004), at 6-9, 22-24.[1]

When Jones arrived at the Woodbury County Jail, Officer Wagner discovered in Jones's hand "two to three Baggies with a white chunky substance in them[.]" Doc. No. 6, Item 1(k), Transcript of Bench Trial, at 22. Officer Wagner believed the substance to be methamphetamine. In addition, he found another Baggie containing suspected methamphetamine under the seat of his patrol car, directly underneath where Jones had been sitting. *Id.* at 23.

On August 23, 2003, the Iowa District Court for Woodbury County appointed the public defender's office to represent Jones. On August 27, 2003, the State of Iowa charged Jones with possession with intent to deliver more than five grams of metham-phetamine, and a drug tax stamp violation. On September 3, 2003, Jones filed a written arraignment and a plea of not guilty.

On September 25, 2003, Jones's attorney filed, and the court granted, a motion to continue trial based on the unavailability of a lab report and videotape evidence, as well as counsel's unavailability for several weeks to recover from surgery. On December 4, 2003, Jones's attorney sought a further continuance, again due to the unavailability of the videotape, as well as the possible need to take depositions. The motion was granted, and the court set a new deadline of January 2, 2004, to complete depositions and file pretrial motions.

---

[1]Page number citations to the Habeas Appendix, Doc. No. 20-2, are to the numbers located at the bottom right of each page.

Jones retained attorney Martha McMinn, who filed an appearance on Jones's behalf on December 8, 2003. On February 5, 2004, McMinn deposed Officer Wagner, and on February 11, 2003, McMinn filed a motion to suppress evidence and supporting memorandum. The State resisted the motion to suppress on procedural grounds, arguing the motion had not been filed within forty days of arraignment as required by Iowa Rule of Criminal Procedure 2.11(4). Jones conceded the motion was filed late, but she argued her previous attorney was ineffective in failing to file a timely motion to suppress. She argued that because the motion was meritorious, it would constitute ineffective assistance of counsel in any event if the motion was filed late, and therefore, she asked the court to rule on the merits of the motion. The State responded that Jones's previous attorney was not ineffective in failing to file the motion because the motion lacked merit.

John D. Ackerman, Judge of the Third Judicial District of Iowa, held a hearing on the motion to suppress on August 2, 2004. On August 12, 2004, Judge Ackerman denied the motion to suppress, sustaining the State's timeliness objection, and holding no good cause excused Jones's failure to file the motion timely. *See* Doc. No. 21 at App-54 to App-93, Ruling on Motion to Suppress. However, Judge Ackerman went on to discuss the merits of the motion, noting that if the decision to deny the motion on procedural grounds were reversed, then the court would have to address the merits anyway, whereas if the decision were upheld, then the court would be faced at some point with an ineffective assistance of counsel claim. *See* Doc. No. 20-2, Habeas App. at 39.

Judge Ackerman first addressed the legality of the traffic stop for the cracked windshield. At the suppression hearing, Officer Wagner testified that although he had had prior contact with Jones, he did not recognize her as the passenger in the car before he stopped the vehicle. Judge Ackerman found the officer's testimony not to be credible on this point. He further found that a reasonable officer would not have believed the crack

in the windshield obscured the driver's vision in any way.[2] He concluded the stop of the vehicle was completely pretextual, conducted for the specific purpose of investigating whether the vehicle's occupants were involved in drug trafficking or possession, and no probable cause existed for the stop. *See id.* at 39-42.

Judge Ackerman next addressed the issue of whether Officer Wagner had probable cause to arrest Jones for violating the drug paraphernalia ordinance. He held that the facts gave rise merely to a suspicion that the scale the officer found in the car violated the ordinance, but the facts "did not rise to the level that a reasonable and proper prudent person would believe that the drug paraphernalia statute had been violated." *Id.* at 43. Thus, despite Judge Ackerman's denial of the motion to suppress as untimely filed, he found the traffic stop was illegal and the officer lacked probable cause to arrest Jones. *Id.* at 43-44.

Jones filed a motion to reconsider on August 23, 2004, and the district court denied the motion on September 13, 2004. Jones waived her right to a jury trial, and a bench trial was held on October 12, 2004, before Third Judicial District Judge Mary Jane Sokolovske. On December 8, 2004, Judge Sokolovske issued a Ruling and Judgment Order, finding Jones guilty of possessing more than five grams of methamphetamine with intent to deliver in violation of Iowa Code § 124.401(1)(b)(7), a class B felony; and a drug tax stamp violation under Iowa Code § 453B, a class D felony. *Id.* at 48-52. On February 17, 2005, Judge Sokolovske sentenced Jones on the possession with intent charge to an indeterminate term of imprisonment not to exceed twenty-five years, with a mandatory minimum sentence of one-third of that time, and a fine of $5,000. *Id.* at 53-54. On the drug tax stamp charge, Jones was sentenced to an indeterminate term of imprisonment not to exceed

---

[2]Judge Ackerman made this determination after conducting an in-person examination of the vehicle in question, including sitting behind the wheel of the vehicle to see if the crack obscured his vision.

five years, to run concurrently with her sentence on the possession with intent charge, and a fine of $1,000.00, with the fine suspended. *Id.* at 54-55.

Jones filed a direct appeal of her conviction in which she raised the issues of whether her first attorney was ineffective in failing to file a timely motion to suppress, and whether the trial court erred in failing to grant her relief from the procedural default caused by her counsel's ineffectiveness. *See* Appellant's Brief in *State v. Jones*, S. Ct. No. 05-0316 (Iowa Sup. Ct. Aug. 12, 2005). In the State's responsive brief, the State argued Jones's attorney was not ineffective in failing to file a timely motion to suppress because Jones could not show prejudice, given that the cracked windshield supported the traffic stop and there was probable cause to arrest Jones for possession of drug paraphernalia. *See* Appellee's Brief in *State v. Jones, supra*. In her reply brief, Jones argued the traffic stop of the vehicle was illegal, and there was not probable cause for her arrest. *See* Appellee's Reply Brief in *State v. Jones, supra*.

On January 19, 2006, the Iowa Court of Appeals affirmed Jones's conviction. *State v. Jones*, 711 N.W.2d 732 (Table), 2006 WL 133009 (Iowa Ct. App. Jan. 19, 2006); Habeas App. at 56-64 ("*Jones*"). The court acknowledged "that counsel may be found ineffective by virtue of having filed an untimely motion to suppress." *Jones*, Habeas App. at 59 (citing *State v. Hrbek*, 336 N.W.2d 431, 4367 (Iowa 1983)). However, the court "fail[ed] to see how Jones's *prior* counsel could possibly be considered ineffective on this record." *Id.* (emphasis in original). The court noted that when Ms. McMinn entered her appearance, nearly one full month remained within which to file pretrial motions, yet Ms. McMinn did not file a motion, seek a further extension of time, or provide any reason for her failure to do either. *Id.* The court held the trial court did not abuse its discretion in finding Jones had failed to show good cause to excuse the untimely suppression motion. *Id.* at 60.

Further, the *Jones* court held that "[r]egardless whether *either* prior *or* current counsel for Jones breached an essential duty to file a timely motion to suppress the evidence . . ., we cannot discern any prejudice that Jones suffered." *Id.* (emphasis added). The court concluded the results of the proceeding would not have been different if the motion had been filed on time. The court noted an officer may stop a vehicle for any traffic offense, however minor, as well as for "concerns for highway safety." *Id.* at 61 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331, 337 (1997); *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993)). The court held that in utilizing an objective standard to consider the reasonableness of a traffic stop, the court does not look to the officer's personal motivations for making the stop, *id.* (citing *State v. Predka*, 555 N.W.2d 202, 205 (Iowa 1996)), but instead "must look at the *facts available to the officer at the time of the stop*." *Id.* at 62 (emphasis in original; citing *State v. Haviland*, 532 N.W.2d 767, 768 (Iowa 1995)).

The appellate court found Judge Ackerman had gone too far in making a "close-up and methodical scrutiny" of the vehicle's windshield in determining the crack did not obscure the driver's clear view. The court held the officer was reasonable in concluding, based on his observation from his vantage point at the time of the stop, that "the crack potentially could have obscured the driver's line of vision. This was reasonable suspicion based on articulated facts, to support a *Terry* stop." *Id.* at 63 (referencing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The *Jones* court further held that under the objective standard, even if the stop was pretextual, the officer's "[m]otivation for stopping a vehicle is not controlling in determining whether reasonable suspicion existed[.]" *Id.* (citing *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002); *State v. Heminover*, 619 N.W.2d 353, 360 (Iowa 2000)). Thus, the court concluded that even though in retrospect the crack may not have been "severe and excessive, there was indeed a crack that ran the length of the windshield"; Officer Wagner's belief that the crack could

have impaired the driver's vision was reasonable; and therefore, the officer's investigatory stop of the vehicle "was objectively reasonable." *Id.* at 63-64. The *Jones* court affirmed Judge Ackerman's denial of the motion to suppress on procedural grounds, and further held that "even if the motion had been made in a timely fashion, it would have been without merit as the officer [had] reasonable suspicion to stop the vehicle." *Id.* at 64.

Significantly, the appellate court did not address the issue of whether Officer Wagner had probable cause to arrest Jones for possession of drug paraphernalia in violation of the city ordinance. *See Jones*, Habeas App. at 56-64.

On February 10, 2006, Jones filed an application for further review, arguing: (a) the Iowa Court of Appeals's ruling was contrary to established Iowa case law requiring that "in order to perform an investigatory stop, an officer must have sufficient facts to warrant a person of reasonable caution in the belief that a crime has been or is being committed"; (b) even if the initial traffic stop was proper, Jones's "arrest for violation of the Sioux City paraphernalia law was without probable cause and [she] was entitled to a ruling on that issue"; and (c) her counsel's ineffective assistance constituted good cause for her failure to file a timely suppression motion. Application for Further Review in *State v. Jones*, S. Ct. No. 05-0316 (Iowa Sup. Ct. Feb. 10, 2006). In this third argument, Jones asserted, in a single sentence, that because she "undoubtedly received ineffective assistance, *whether by her original counsel or [Ms. McMinn] being irrelevant to her right to relief*, she is entitled to relief[.]" *Id.* at p. 13 (emphasis added).

On March 28, 2006, the Iowa Supreme Court issued an order denying further review. *See* Habeas App. at 65. Jones did not file an application for postconviction relief. Instead, she filed the instant action, raising a single issue for review. Jones claims she "was denied effective assistance of counsel at the trial court level, resulting in denial of an otherwise meritorious suppression motion." Doc. No. 3, p. 5, ¶ 12.A. On March 6,

2008, Judge Mark W. Bennett referred the case to the undersigned for review of the record and the preparation of a report and recommended disposition of the case.  Doc. No. 28.

### *Exhaustion*

Jones has not filed an application for postconviction relief to assert that Ms. McMinn was ineffective in failing to file a timely motion to suppress.  On direct appeal, the State asserted the record was "inadequate to fully address whether Jones might have a Sixth Amendment claim against [Ms. McMinn]."  Appellee's Brief at 20 in *State v. Jones*, *supra*.  Nevertheless, the appellate court held (addressing only Jones's claim that the traffic stop was not supported by probable cause) that Jones had failed to show prejudice regardless whether it was her first or second attorney that failed to file a timely motion to suppress.  *Jones*, Habeas App. at 59.  In the present action, although the State points out that Jones has failed to properly exhaust or fairly present a Sixth Amendment claim against Ms. McMinn in the state courts, the State suggests the court should overlook this default, stating as follows:

> However, as a practical matter, Jones' default in this regard does not materially alter this Court's review process because the critical question here is ultimately the same – whether one or both of her attorneys were ineffective in handling suppression matters under a *Strickland v. Washington* standard.

Doc. No. 20, p. 12 (citations omitted).

Jones argues she has exhausted her ineffective assistance of counsel claim against Ms. McMinn.  She argues the State raised the issue on appeal, she responded to it in her reply brief, and the Iowa Court of Appeals "exercised its right to rule on the claim before it."  Doc. No. 22 at 3 (citing *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003)).

The Eighth Circuit has explained repeatedly:

> Before a federal court may reach the merits of a claim in a *habeas* petition by a state prisoner, it "must first

> determine whether the petitioner has fairly presented his
> federal constitutional claims to the state court." *See Duncan
> v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed.
> 2d 865 (1995) (*per curiam*); *McCall v. Benson*, 114 F.3d 754,
> 757 (9th Cir. 1997).

*Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998). Providing the State the opportunity to consider and rule upon alleged violations of constitutional rights is a necessary precursor to federal review. *See id.*; 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]"); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S. Ct. 1728, 1734, 144 L. Ed. 2d 1 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts[.]" (emphasis added)); *Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998) (state prisoner must fairly present constitutional claims to state court before seeking federal *habeas* review).

However, a State can expressly waive the exhaustion requirement. 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."); *see Banks v. Dretke*, 540 U.S. 668, 705, 124 S. Ct. 1256, 1280, 157 L. Ed. 2d 1166 (2004) (*dicta*). The court finds the State has done so here. The State observed that any failure to exhaust the ineffective assistance of counsel issue would not materially alter the court's review process in this case, and then proceeded to argue the issue fully on the merits. Thus, the court finds it is unnecessary to determine whether Jones exhausted her claim that Ms. McMinn was ineffective.

However, to prevail on her ineffective assistance of counsel claim, Jones must do more than show cause for her failure to file a timely motion to suppress; she also must show that she was prejudiced by her counsel's ineffectiveness. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Therefore, the

court must consider the merits of Jones's suppression motion to determine whether, but for her counsel's failure to file the motion on time, Jones would have prevailed and the result of the proceedings would have been different. Before turning to the merits of Jones's claims, the court will discuss the law applicable to ineffective assistance of counsel claims, and the standard of review applicable to Jones's petition.

### Standards for Ineffective Assistance of Counsel Claim

The standard for proving ineffective assistance of counsel was established by the Supreme Court in *Strickland v. Washington*:

> *First,* the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) (emphasis added). The reviewing court must determine "whether counsel's assistance was reasonable considering all the circumstances." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2065.

The defendant's burden is considerable, because "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, 466 U.S. at 689, 104 S. Ct. at 2065 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). "Reasonable trial strategy does not constitute ineffective

assistance of counsel simply because it is not successful." *James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996).

Furthermore, even if the defendant shows counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067.

Thus, the prejudice prong of *Strickland* requires a petitioner, even one who can show that counsel's errors were unreasonable, to go further and show the errors "actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id.* *See Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997)). Rather, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

A petitioner must satisfy both prongs of *Strickland* in order to prevail on an ineffective assistance of counsel claim. *See id.*, 466 U.S. at 687, 104 S. Ct. at 2064. It is not necessary to address the performance and prejudice prongs in any particular order, nor must both prongs be addressed if the district court determines the petitioner has failed to meet one prong. *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069. Indeed, the *Strickland* Court noted that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Tokar v. Bowersox*, 198 F.3d 1039, 1046 (8th Cir. 1999) (citing *Strickland*).

In short, a conviction or sentence will not be set aside "solely because the outcome would have been different but for counsel's error, rather, the focus is on whether 'counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Mansfield v. Dormire*, 202 F.3d 1018, 1022 (8th Cir. 2000) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)).

### *General Standard of Review for Habeas Cases*

Except as discussed *infra* regarding Jones's Fourth Amendment claim that no probable cause existed for her arrest, the court's review of Jones's petition is governed by the standards set forth by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The *Williams* Court explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05, 120 S. Ct. at 1519 (quoting 28 U.S.C. § 2254(d)(1)).

Under the first category, a state-court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.*, 529 U.S. at 405, 120 S. Ct. at 1519. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id.*, 529 U.S. at 412-13, 120 S. Ct. at 1523. Further, "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.

The second category, involving an "unreasonable application" of Supreme Court clearly-established precedent, can arise in one of two ways. As the Court explained:

> First, a state-court decision involves an unreasonable applica-
> tion of this Court's precedent if the state court identifies the
> correct governing legal rule from this Court's cases but
> unreasonably applies it to the facts of the particular state
> prisoner's case. Second, a state-court decision also involves
> an unreasonable application of this Court's precedent if the
> state court either unreasonably extends a legal principle from
> our precedent to a new context where it should not apply or
> unreasonably refuses to extend that principle to a new context
> where it should apply.

*Id.*, 529 U.S. at 407, 120 S. Ct. at 1520 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'" *Id*, 529 U.S. at 407-08, 120 S. Ct. at 1520. Notably,

> Under § 2254(d)(1)'s "unreasonable application" clause, then,
> a federal habeas court may not issue the writ simply because
> that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal
> law erroneously or incorrectly. Rather, that application must
> also be unreasonable.

*Id.*, 529 U.S. at 411, 1250 S. Ct. at 1522.

If the state court decision was not contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and if it did not involve an unreasonable application of that law, then the federal court must determine whether the

state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Jones argues that in considering whether she was prejudiced by her counsel's ineffectiveness, the failure of the Iowa Court of Appeals to address the issue of whether probable cause existed for her arrest alters the standard of review on that issue. She argues that because the appellate court failed to reach the issue, this court should employ "a pre-AEDPA[3] standard of [*de novo*] review." Doc. No. 19 at 18 (citing *Clemons v. Luebbers*, 381 F.3d 744, 756 n.8 (8th Cir. 2004) (in turn citing *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003)); *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 2542, 156 L. Ed. 2d 471 (2003)). Alternatively, she argues "[t]his Court should 'look through' the Iowa Court of Appeals' ruling to the district court's adjudication" of the issue regarding whether probable cause existed for her arrest. Doc. No. 19 at 19 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)).

The State argues the court's review should be deferential, pursuant to 28 U.S.C. § 2254(d). The State notes the issue of whether probable cause existed for Jones's arrest was briefed fully before the Iowa Court of Appeals, and argues the appellate court's finding that Jones was not prejudiced by any ineffective assistance of counsel "was an adjudication on the merits of both Fourth Amendment issues" (i.e., the issue of the legality of the initial traffic stop, and the issue of whether probable cause existed for her arrest on the paraphernalia charge). Doc. No. 20 at 16-19. The State further asserts that if the court finds the deferential standard of review is inapplicable, then the proper standard of review on the issue of whether probable cause existed for Jones's arrest would be *de novo*. *Id*. at 19-20. In any event, the State argues Judge Ackerman's findings on the merits of the motion to suppress are not entitled to deference. *Id*. at 20.

---

[3]The "AEDPA" is the Anti-Terrorism and Effective Death Penalty Act of 1996, Publ L. 104-132, 110 Stat. 1214, enacted in relevant part at 28 U.S.C. § 2254.

The court finds that even if the "look through" doctrine were applicable here, Judge Ackerman's findings on the merits of the motion would not be entitled to deference. Judge Ackerman decided the motion on procedural grounds. His findings on the merits of the suppression motion can only be considered an advisory opinion or *dicta*. In either case, they did not represent the court's ruling on the motion and have no effect on this court's consideration of Jones's petition. *See* Black's Law Dictionary at 64 (6th ed. 1995) ("An advisory opinion is . . . an interpretation of the law without binding effect."); *id.* at 454 (defining "*dicta*" as "[o]pinions of a judge which do not embody the resolution or determination of the specific case before the court").

The court further finds its review of the issue of whether probable cause existed for Jones's arrest should be *de novo*. *See Clemons v. Luebbers*, 381 F.3d 744, 756 n.8 (8th Cir. 2004) (in turn citing *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003)); *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 2542, 156 L. Ed. 2d 471 (2003)). Although, as the State points out in its brief, "'no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits,'" Doc. No. 20 at 16 (quoting *Brown v. Luebbers*, 371 F.3d 458, 461 (8th Cir. 2004)), in this case, the appellate court said *nothing* about this issue, either in its recitation of the case's procedural and factual history or in the court's discussion on the merits. Indeed, despite the fact that the parties briefed the issue, the Iowa Court of Appeals failed even to acknowledge that Jones had raised the issue. *See Jones*. This court therefore finds the standard of review on the issue of whether probable cause existed for Jones's arrest should be the pre-AEDPA standard of *de novo* review. *See Clemons, supra*.

The court now turns to consideration of the merits of Jones's motion to suppress to determine whether her attorneys' failure to file the motion on time was prejudicial to Jones as required by *Strickland*.

### The Traffic Stop

Little analysis is required regarding this issue. As the *Jones* court observed, an officer can conduct a traffic stop of a vehicle for any traffic violation, however minor, even if the stop is pretextual. *Jones*, Habeas App. at 61 (citations omitted). *See, e.g.,* *United States. v. Perez*, 200 F.3d 576 (8th Cir. 2000) (following too close); *United States v. Beatty*, 170 F.3d 811 (8th Cir. 1999) (no working light illuminating license plate); *United States v. Lyton*, 161 F.3d 1168 (8th Cir. 1998) (following too close).

Jones does not seriously contest this issue in her brief, noting only in passing that the Iowa Court of Appeals held the traffic stop was legal. *See* Doc. No. 19. Instead, both Jones and the State focus on whether probable cause existed for Jones's arrest for violation of the city ordinance. *See id.*; Doc. Nos. 20 & 22.

Because the traffic stop was legal, the *Jones* court's conclusion that Jones cannot show prejudice on this point was correct. The *Jones* court identified *Strickland* as the controlling Supreme Court precedent, and correctly applied *Strickland* in concluding Jones had failed to meet her burden to show she was prejudiced by her attorneys' failure to file a timely motion to suppress on the issue of the legality of the traffic stop. Therefore, Jones has failed to meet her burden to show she was prejudiced by her attorneys' failure to file a timely motion to suppress on this issue.

### Probable Cause for Jones's Arrest

The standards under which an officer may make a warrantless arrest are well-established. Probable cause "has come to mean more than bare suspicion," and exists

> where 'the facts and circumstances within their (the officers')
> knowledge and of which they had reasonably trustworthy
> information (are) sufficient in themselves to warrant a man of
> reasonable caution in the belief that' an offense has been or is
> being committed. *Carroll v. United States*, 267 U.S. 132,
> 162, 45 S. Ct. 280, 288, 69 L. Ed. 543, 39 A.L.R. 790.

*Brinegar v. United States*, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-11, 93 L. Ed. 1879 (1949). The probable cause determination deals, as the term implies, with probabilities. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 175 69 S. Ct. at 1310; *accord Maryland v. Pringle*, 540 U.S. 366, 370-71, 124 S. Ct. 795, 799-800, 157 L. Ed. 2d 769 (2003). The basis of probable cause "is a reasonable ground for belief of guilt . . . [which] means less than evidence which would justify condemnation or conviction." *Id.* (internal quotation marks, citations omitted).

The *Brinegar* Court observed that many situations confronting law enforcement officers "are more or less ambiguous," and as a result, officers sometimes will make mistakes. However, the Court held "the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Id.* at 176, 69 S. Ct. at 1311. The Court observed that a "troublesome line" often exists "between mere suspicion and probable cause." *Id.* The Court explained that the "line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances." *Id.* It is just such a "troublesome line" that faces the court in the present case.

The court must determine whether Officer Wagner's knowledge *at the time* "amounted to more than mere suspicion and constituted probable cause" for Jones's arrest. *Id.* at 177, 69 S. Ct. at 1311-12. Notably, Iowa law allows a peace officer to make a warrantless arrest in certain circumstances, including when someone commits a public offense in the officer's presence, or when a public offense has been committed, or the officer reasonably believes an indictable public offense has been committed, and the officer reasonably believes the person to be arrested has committed the offense. Iowa Code § 804.7. The statute's "reasonable belief" standard "is tantamount to probable cause." *State v. Freeman*, 705 N.W.2d 293, 298 (Iowa 2005) (citing *State v. Harris*, 490 N.W.2d

17

561, 563 (Iowa 1992)).  Violation of a city ordinance constitutes a "public offense" for purposes of Iowa Code § 804.7.  *State v. Ceron*, 573 N.W.2d 587, 589-92 (Iowa 1997).

At the hearing on Jones's motion to suppress, Officer Wagner testified regarding the extent of his knowledge at the time of Jones's arrest.  On August 22, 2003, Officer Wagner was on routine patrol in a police vehicle in Sioux City, Iowa.  He saw a vehicle that he observed "had a cracked windshield that went directly within the driver's line of vision in comparison [with] where the driver was sitting in the vehicle."  Doc. No. 6(f), Transcript of Suppression Hearing, at p. 9.  He stopped the vehicle for the cracked windshield, informed the driver why she had been stopped, and obtained identification from the driver and Jones, the passenger.  *Id.* at pp. 9, 12.  The driver, Bobbi Jo Linehan, did not have a driver's license, and the officer returned to his patrol car "to run checks on both the driver and the passenger[.]"  *Id.* at p. 13.  He learned Linehan had an active warrant from Illinois, on a theft charge.  In addition, he learned Linehan did not have a current driver's license.  Officer Wagner made the decision to arrest Linehan.  *Id.* at p. 17.  He effected the arrest, patted Linehan down, and placed her in his patrol car.  *Id.* at p. 18.

After he arrested Linehan, Officer Wagner "approached the vehicle again and asked the front seat passenger [Jones] to step out of the vehicle."  *Id.*  She complied, and the officer testified that after Jones got out of the vehicle, the following events occurred:

> A    [By Officer Wagner]  After having the defendant step out of the car, we had some brief conversations as to whether she had anything illegal on her or not.  She stated she didn't.  She did not want me to search her necessarily, but she did empty her pockets for me.
>
> Q    [By Assistant Woodbury County Attorney Mark Campbell] And did you find anything illegal on the defendant at that time?
>
> A    No, I did not.
>
> Q    What happened then?

A       At that time I had her step away from the vehicle due to the fact that I was going to search the vehicle incident to the arrest of the driver. And I proceeded to search the vehicle at that time.

Q       And did you find anything of interest in your search of the vehicle incident to the arrest of the driver?

A       Yes, I did.

Q       What did you find?

A       I found a – what I would call a gram scale which could also be referred to as a mail scale. Very small, silver object, commonly used to weigh marijuana by marijuana users and dealers.

Q       And from your training and experience, you recognized that the scale was of the type that would be used by drug users to weigh their drugs?

A       Yes.

Q       Did you have any conversation with the driver or the defendant regarding the gram scale?

A       Yes, I did.

                .   .   .

Q       So what conversation did you have with the driver regarding the gram scale?

A       I believe the sequence of events was I asked the passenger about the scale first then I proceeded to ask the driver. Upon asking the driver about the scale, I showed it to her. Didn't ask any question.

        THE COURT: Showed it to who?

        THE WITNESS: Showed it to the driver or Bobby [sic] Jo, who was under arrest, and, um, asked her what it was. She explained to me that she stated it looked like a scale used to weigh marijuana.

19

> MR. CAMPBELL: And that was the driver's opinion of what the scale looked like?
>
> THE WITNESS: That was her opinion, correct.

Q   [By Mr. Campbell] And did you have any conversation with the defendant regarding what she thought of the scale?

A   Yes, I did.

Q   And what did the defendant indicate?

A   The defendant indicated that – again this was Misty Jones – indicated that the scale was used by her father, I believe, to weigh food.

Q   Now, based upon your training and experience and you're [sic] familiarity with the scale, was the defendant's explanation credible?

A   No.

Q   What did you decide to do then?

A   I did decide to interview further to establish ownership of the scale. Both subjects inside the vehicle denied ownership of this scale. It was in a position within the vehicle to be placed there by either subject so I made the decision to arrest and charge both subjects with possession of drug paraphernalia.

Q   And possession of drug paraphernalia would be a violation of city ordinance?

A   That's correct.

*Id.* at pp. 18-21.

On cross-examination by Ms. McMinn, Officer Wagner stated he had met Jones "on one separate occasion" prior to the date of the traffic stop; however, he did not recognize the vehicle as a car associated with Jones, and he did not recognize Jones at the time of the traffic stop and her arrest. *Id.* at p. 23.

To summarize, at the time of Jones's arrest, Officer Wagner knew the following:

▸ Jones was a passenger in a vehicle stopped for a windshield violation.

▸ The driver of the vehicle had an outstanding warrant on a theft charge.

▸ A small scale was found in the vehicle.

▸ The scale was in a location where either Jones or the driver could have put it.

▸ Both the driver and Jones denied ownership of the scale.

▸ The driver indicated the scale appeared to be like a scale used to weigh marijuana.

▸ Jones stated her father used the scale to weigh food.

At the scene of the traffic stop, no contraband of any kind was located in the vehicle, or on the persons of Jones or the vehicle's driver.

The State also claims Officer Wagner "knew the vehicle did not belong to Jones, Jones'[s] father, or Ms. Line[]han." Doc. No. 20 at 24-25. In support of this statement, the State cites the Suppression Transcript, Doc. No. 6(f), at pages 17 and 32-33. The court has reviewed the entire suppression transcript and finds Officer Wagner never testified to anything at all regarding his knowledge of the vehicle's ownership. He testified he ran "checks on both the driver and the passenger due to the fact that the passenger had provided [him] with an ID for locals and also for driver's license and also for NCIC." Doc. No. 6 at p. 13. He testified the records check indicated the driver "did not currently have a driver's license and also came back that she had an NCIC warrant . . . out of Illinois for theft." He also did not "recall her having any proof of insurance for the vehicle." *Id.* at p. 17. The officer never testified he made a determination at the time of the traffic stop regarding who owned the vehicle. Pages 32-33 of the transcript, cited by the State, contain testimony from a Michael Swingen, who apparently owned the vehicle; however, nothing in the record suggests Officer Wagner knew who owned the vehicle at the time. "Facts that occur or come to light subsequent to the arrest are irrelevant to a determination of whether probable cause existed at the time of arrest." *Children v.*

*Burton*, 331 N.W.2d 673, 680 (Iowa 1983) (citing *Henry v. United States*, 361 U.S. 98, 103, 80 S. Ct. 168, 171, 4 L. Ed. 2d 134, 139 (1959)).

To determine whether the information known to the officer was sufficient to constitute probable cause for Jones's arrest, it may be useful to examine the Sioux City ordinances governing "drug paraphernalia." The Sioux City Municipal Code ("Code") defines "drug paraphernalia" to include "[s]cales and balances used, intended for use, or designed for use in weighing or measuring controlled substances." Code § 8.20.030(5). The Code makes it "unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance. . . ." Code § 8.20.050.

The Code sets forth the following fifteen factors that "should be considered in addition to all other logically relevant factors" in the determination of whether or not an object is drug paraphernalia:

1.   Statements.  Statements by an owner or by anyone in control of the object concerning its use.

2.   Proximity to Violation.  The proximity of the object, in time and space, to a direct violation of the Uniform Controlled Substances Act, Chapter 124 of the Code of Iowa.

3.   Proximity to Substances.  The proximity of the object to controlled substances.

4.   Residue.  The existence of any residue of controlled substances on the object.

5.   Evidence of Intent.  Direct or circumstantial evidence of the intent of an owner or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of the Uniform Controlled Substances Act, Chapter 124 of the Code of Iowa.

6.      Innocence of an Owner.  The innocence of an owner, or of anyone in control of the object, as to a direct violation of the Uniform Controlled Substances Act, Chapter 124 of the Code of Iowa, should not prevent a finding that the object is used, intended for use, or designed for use as drug paraphernalia.

7.      Instructions.  Instructions, oral or written, provided with the object concerning its use.

8.      Descriptive Materials.  Descriptive materials accompanying the object which explain or depict its use.

9.      Advertising.  National and local advertising concerning its use.

10.      Displayed.  The manner in which the object is displayed for sale.

11.      Licensed Distributor or Dealer.  Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products.

12.      Prior Convictions.  Prior convictions, if any, of any owner or of anyone in control of the object under any State or Federal law relating to any controlled substances.

13.      Sales Ratios.  Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise.

14.      Legitimate Uses.  The existence and scope of legitimate uses for the object in the community.

15.      Expert Testimony.  Expert testimony concerning its use.

Code § 8.20.040.

As an officer charged with enforcing the Sioux City Municipal Code, Officer Wagner reasonably should have been aware of the above factors at the time he determined that the scale was "drug paraphernalia," and arrested Jones for its possession.  Therefore, examination of the relevant factors is useful in determining whether the officer had probable cause to arrest Jones for possession of drug paraphernalia.

Regarding factor 1, Officer Wagner testified Jones stated her father used the scale to weigh food, while Linehan stated the scale looked like one used to weigh marijuana. The officer testified he disbelieved Jones's explanation that her father used the scale to weigh food. He was entitled to consider the women's statements, and to make reasonable inferences from them. *See Children v. Burton*, 331 N.W.2d 673, (Iowa 1983) (quoting 5 Am Jur. 2d *Arrest* § 48, at 740-41 (1962)). Regarding factor 14, Jones posited one legitimate use for the scale. The officer himself posited another during his testimony, identifying the scale as "a gram scale which could also be referred to as a mail scale."

None of the other factors appears to apply to the scale in question. The officer knew of no drugs in proximity to the scale. There was no drug residue on the scale. And there was no evidence that Jones and Linehan were actually using the scale, or delivering it to someone else to use, for drug-related activities. Simply stated, all the officer knew was a scale that *could* be used to weigh drugs had been found in the vehicle, and he disbelieved Jones's explanation about how the scale was used. This was not enough to determine that the scale was "drug paraphernalia" under the Code. The undersigned agrees with Judge Ackerman's decision that the officer's knowledge at the time constituted mere suspicion and did not rise to the level of probable cause.

The State argues Officer Wagner was justified in arresting both Jones and Linehan for possession of paraphernalia because both were in a position to exercise dominion and control over the scale, neither claimed ownership of the scale, and the officer did not believe Jones's explanation of how the scale was used. Doc. No. 20 at 25. In support of this argument, the State cites *Pringle*, 540 U.S. at 373-74, 124 S. Ct. at 801-02. *Id.* *Pringle* is easily distinguished on its facts. In that case, the officers found cocaine and a quantity of cash in the car, constituting probable cause to believe a crime was being committed. In the present case, all Officer Wagner found was a scale – an item that has

at least as many innocent uses as it does uses related to criminal activity.[4]  Jones's and Linehan's denial that they owned the scale provided no basis for suspicion because Jones intimated the scale belonged to her father.  The officer's suspicion that the scale was used to weigh drugs, without more, simply was not enough to cross the line between suspicion and probable cause.

Returning now to Jones's ineffective assistance of counsel claim, because Officer Wagner lacked probable cause to arrest Jones for possession of drug paraphernalia, it must follow that Jones was prejudiced, and seriously so, by her attorneys' failure to file the suppression motion on time, and her attorneys were deficient in failing to do so.  Had the suppression motion been filed timely, it would have been granted and the evidence flowing from Jones's arrest would have been suppressed, leading to a dismissal of the charges against her.  The deficient performance of Jones's attorneys resulted in proceedings that were fundamentally unfair, rendering the result of the trial unreliable.  *See Mansfield*, 202 F.3d at 1022.  Jones has satisfied her burden under *Strickland* to show a reasonable probability exists that, but for her counsel's deficient performance, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. 692, 104 S. Ct. at 2068. Accordingly, Jones's petition for writ of *habeas corpus* should be granted.

## Conclusion

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[5] to the Report and Recommendation in accordance with

---

[4]For example, dieters often weigh their food, a use Jones stated her father made of the scale in this instance.

[5]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections.  *See* Fed. R. Civ. P. 72.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.  *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that Jones's petition for writ of *habeas corpus* be granted.

The court finds further hearing on this matter would not be beneficial, and the hearing previously scheduled for April 29, 2008, at 10:00 a.m. is **cancelled**.

**IT IS SO ORDERED.**

**DATED** this 4th day of April, 2008.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT