**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

MISTY MINA JONES,

    Petitioner,

vs.

DIANN WILDER-TOMLINSON,

    Warden.

No. C 06-4060-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING PETITION FOR A WRIT OF HABEAS CORPUS**

———————————

**TABLE OF CONTENTS**

*I.*  *INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 *A.*  *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 *B.*  *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
 *A.*  *Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  *1.*  *Standard of review of report and recommendation* . . . . . . . . . 9
  *2.*  *General standards for § 2254 relief* . . . . . . . . . . . . . . . . . 14
 *B.*  *Objections To Report And Recommendation* . . . . . . . . . . . . . . . . . 17
  *1.*  *Adjudication on the Merits of the Probable Cause to Arrest*
   *Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  *2.*  *Procedural default and the exhaustion requirement* . . . . . . . 19
  *3.*  *Ineffective assistance of counsel analysis* . . . . . . . . . . . . . 22
   *a.*  *Validity of the traffic stop* . . . . . . . . . . . . . . . . . 22
   *b.*  *Validity of the arrest* . . . . . . . . . . . . . . . . . . . . 23
    *i.*  *Deficient performance* . . . . . . . . . . . . . . . . 24
    *ii.*  *Prejudice* . . . . . . . . . . . . . . . . . . . . . . . 26

*IV.*  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# I. INTRODUCTION AND BACKGROUND

## A. Procedural Background

On July 25, 2007, the petitioner Misty Jones filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. No. 3. Jones is an inmate in the Iowa Correctional Institution for Women in Mitchellville, Iowa. Doc. No. 1. She was convicted, following a bench trial before the Iowa District Court for Woodbury County, of possession with intent to deliver methamphetamine and failure to affix a drug tax stamp. Doc. No. 20-2. She was later sentenced to a term of imprisonment of up to twenty-five years and a fine of $5,000 for the possession with intent to deliver charge and five years with a suspended fine for the drug stamp charge. *Id.* at 53-54. On April 4, 2008, Chief United States Magistrate Judge Paul A. Zoss filed a Report and Recommendation on Petition for Writ of Habeas Corpus for this matter, in which he recommended habeas corpus relief be granted. Doc. No. 31. Respondent Diann Wilder-Tomlinson (the State) filed objections to the report on April 14, 2008. Doc. No. 32.

## B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> On the afternoon of August 22, 2003, Jones was a passenger in a car driven by a friend, Bobbi Jo Linehan. Sioux City Police Officer Dane Wagner stopped the vehicle when he noticed a crack in the windshield that he believed crossed through the driver's line of sight. Linehan was arrested for failing to have a driver's license, and on an outstanding Illinois warrant. Officer Wagner asked Jones to get out of the car, and then he searched the car incident to Linehan's arrest. He located a small, silver scale. Upon questioning by the officer, Jones stated her father used the scale to weigh food. Linehan, questioned separately, stated the scale "looked like a scale used to weigh marijuana." Both women denied ownership of the

scale. Officer Wagner disbelieved Jones's explanation about the scale's use, and because the scale was located in the vehicle in proximity to both women, Officer Wagner arrested both of them for possession of drug paraphernalia in violation of the Sioux City Municipal Code. *See* Doc. No. 6(f), Transcript of Suppression Hearing, at pp. 9-21; Doc. No. 20-2, Habeas Appendix ("Habeas App."), Ruling on Motion to Suppress in *State v. Jones*, No. FECR051916 (Woodbury County Dist. Ct. Aug. 12, 2004), at 6-9, 22-24.

When Jones arrived at the Woodbury County Jail, Officer Wagner discovered in Jones's hand "two to three Baggies with a white chunky substance in them[.]" Doc. No. 6, Item 1(k), Transcript of Bench Trial, at 22. Officer Wagner believed the substance to be methamphetamine. In addition, he found another Baggie containing suspected methamphetamine under the seat of his patrol car, directly underneath where Jones had been sitting. *Id.* at 23.

On August 23, 2003, the Iowa District Court for Woodbury County appointed the public defender's office to represent Jones. On August 27, 2003, the State of Iowa charged Jones with possession with intent to deliver more than five grams of methamphetamine, and a drug tax stamp violation. On September 3, 2003, Jones filed a written arraignment and a plea of not guilty.

On September 25, 2003, Jones's attorney filed, and the court granted, a motion to continue trial based on the unavailability of a lab report and videotape evidence, as well as counsel's unavailability for several weeks to recover from surgery. On December 4, 2003, Jones's attorney sought a further continuance, again due to the unavailability of the videotape, as well as the possible need to take depositions. The motion was granted, and the court set a new deadline of January 2, 2004, to complete depositions and file pretrial motions.

Jones retained attorney Martha McMinn, who filed an appearance on Jones's behalf on December 8, 2003. On February 5, 2004, McMinn deposed Officer Wagner, and on February 11, 2003[sic], McMinn filed a motion to suppress evidence and supporting memorandum. The State resisted the motion to suppress on procedural grounds, arguing the motion had not been filed within forty days of arraignment as required by Iowa Rule of Criminal Procedure 2.11(4). Jones conceded the motion was filed late, but she argued her previous attorney was ineffective in failing to file a timely motion to suppress. She argued that because the motion was meritorious, it would constitute ineffective assistance of counsel in any event if the motion was filed late, and therefore, she asked the court to rule on the merits of the motion. The State responded that Jones's previous attorney was not ineffective in failing to file the motion because the motion lacked merit.

John D. Ackerman, Judge of the Third Judicial District of Iowa, held a hearing on the motion to suppress on August 2, 2004. On August 12, 2004, Judge Ackerman denied the motion to suppress, sustaining the State's timeliness objection, and holding no good cause excused Jones's failure to file the motion timely. *See* Doc. No. 21 at App-54 to App-93, Ruling on Motion to Suppress. However, Judge Ackerman went on to discuss the merits of the motion, noting that if the decision to deny the motion on procedural grounds were reversed, then the court would have to address the merits anyway, whereas if the decision were upheld, then the court would be faced at some point with an ineffective assistance of counsel claim. *See* Doc. No. 20-2, Habeas App. at 39.

Judge Ackerman first addressed the legality of the traffic stop for the cracked windshield. At the suppression hearing, Officer Wagner testified that although he had had prior contact with Jones, he did not recognize her as the passenger in the car before he stopped the vehicle. Judge Ackerman found the officer's testimony not to be credible on this point. He further found that a reasonable officer would

not have believed the crack in the windshield obscured the driver's vision in any way (footnote omitted). He concluded the stop of the vehicle was completely pretextual, conducted for the specific purpose of investigating whether the vehicle's occupants were involved in drug trafficking or possession, and no probable cause existed for the stop. *See id.* at 39-42.

Judge Ackerman next addressed the issue of whether Officer Wagner had probable cause to arrest Jones for violating the drug paraphernalia ordinance. He held that the facts gave rise merely to a suspicion that the scale the officer found in the car violated the ordinance, but the facts "did not rise to the level that a reasonable and proper prudent person would believe that the drug paraphernalia statute had been violated." *Id.* at 43. Thus, despite Judge Ackerman's denial of the motion to suppress as untimely filed, he found the traffic stop was illegal and the officer lacked probable cause to arrest Jones. *Id.* at 43-44.

Jones filed a motion to reconsider on August 23, 2004, and the district court denied the motion on September 13, 2004. Jones waived her right to a jury trial, and a bench trial was held on October 12, 2004, before Third Judicial District Judge Mary Jane Sokolovske. On December 8, 2004, Judge Sokolovske issued a Ruling and Judgment Order, finding Jones guilty of possessing more than five grams of methamphetamine with intent to deliver in violation of Iowa Code § 124.401(1)(b)(7), a class B felony; and a drug tax stamp violation under Iowa Code § 453B, a class D felony. *Id.* at 48-52. On February 17, 2005, Judge Sokolovske sentenced Jones on the possession with intent charge to an indeterminate term of imprisonment not to exceed twenty-five years, with a mandatory minimum sentence of one-third of that time, and a fine of $5,000. *Id.* at 53-54. On the drug tax stamp charge, Jones was sentenced to an indeterminate term of imprisonment not to exceed five years, to run concurrently with her sentence on the possession with intent charge, and a fine of $1,000.00, with the fine suspended. *Id.* at 54-55.

Jones filed a direct appeal of her conviction in which she raised the issues of whether her first attorney was ineffective in failing to file a timely motion to suppress, and whether the trial court erred in failing to grant her relief from the procedural default caused by her counsel's ineffectiveness. *See* Appellant's Brief in *State v. Jones*, S. Ct. No. 05-0316 (Iowa Sup. Ct. Aug. 12, 2005). In the State's responsive brief, the State argued Jones's attorney was not ineffective in failing to file a timely motion to suppress because Jones could not show prejudice, given that the cracked windshield supported the traffic stop and there was probable cause to arrest Jones for possession of drug paraphernalia. *See* Appellee's Brief in *State v. Jones, supra*. In her reply brief, Jones argued the traffic stop of the vehicle was illegal, and there was not probable cause for her arrest. *See* Appellee's Reply Brief in *State v. Jones, supra*.

On January 19, 2006, the Iowa Court of Appeals affirmed Jones's conviction. *State v. Jones*, 711 N.W.2d 732 (Table), 2006 WL 133009 (Iowa Ct. App. Jan. 19, 2006); Habeas App. at 56-64 ("*Jones*"). The court acknowledged "that counsel may be found ineffective by virtue of having filed an untimely motion to suppress." *Jones*, Habeas App. at 59 (citing *State v. Hrbek*, 336 N.W.2d 431, 4367 (Iowa 1983)). However, the court "fail[ed] to see how Jones's *prior* counsel could possibly be considered ineffective on this record." *Id.* (emphasis in original). The court noted that when Ms. McMinn entered her appearance, nearly one full month remained within which to file pretrial motions, yet Ms. McMinn did not file a motion, seek a further extension of time, or provide any reason for her failure to do either. *Id.* The court held the trial court did not abuse its discretion in finding Jones had failed to show good cause to excuse the untimely suppression motion. *Id.* at 60.

Further, the *Jones* court held that "[r]egardless whether *either* prior *or* current counsel for Jones breached an essential duty to file a timely motion to suppress the evidence . . ., we cannot discern any prejudice that Jones suffered." *Id.* (emphasis added). The court concluded the results of the proceeding

would not have been different if the motion had been filed on time. The court noted an officer may stop a vehicle for any traffic offense, however minor, as well as for "concerns for highway safety." *Id.* at 61 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331, 337 (1997); *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993)). The court held that in utilizing an objective standard to consider the reasonableness of a traffic stop, the court does not look to the officer's personal motivations for making the stop, *id.* (citing *State v. Predka*, 555 N.W.2d 202, 205 (Iowa 1996)), but instead "must look at the *facts available to the officer at the time of the stop*." *Id.* at 62 (emphasis in original; citing *State v. Haviland*, 532 N.W.2d 767, 768 (Iowa 1995)).

The appellate court found Judge Ackerman had gone too far in making a "close-up and methodical scrutiny" of the vehicle's windshield in determining the crack did not obscure the driver's clear view. The court held the officer was reasonable in concluding, based on his observation from his vantage point at the time of the stop, that "the crack potentially could have obscured the driver's line of vision. This was reasonable suspicion based on articulated facts, to support a *Terry* stop." *Id.* at 63 (referencing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The *Jones* court further held that under the objective standard, even if the stop was pretextual, the officer's "[m]otivation for stopping a vehicle is not controlling in determining whether reasonable suspicion existed[.]" *Id.* (citing *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002); *State v. Heminover*, 619 N.W.2d 353, 360 (Iowa 2000)). Thus, the court concluded that even though in retrospect the crack may not have been "severe and excessive, there was indeed a crack that ran the length of the windshield"; Officer Wagner's belief that the crack could have impaired the driver's vision was reasonable; and therefore, the officer's investigatory stop of the vehicle "was objectively reasonable." *Id.* at 63-64. The *Jones* court affirmed Judge Ackerman's denial of the motion to suppress on procedural grounds, and further held that "even if the motion had been made in a timely fashion, it would

have been without merit as the officer [had] reasonable suspicion to stop the vehicle." *Id.* at 64.

Significantly, the appellate court did not address the issue of whether Officer Wagner had probable cause to arrest Jones for possession of drug paraphernalia in violation of the city ordinance. *See Jones*, Habeas App. at 56-64.

On February 10, 2006, Jones filed an application for further review, arguing: (a) the Iowa Court of Appeals's ruling was contrary to established Iowa case law requiring that "in order to perform an investigatory stop, an officer must have sufficient facts to warrant a person of reasonable caution in the belief that a crime has been or is being committed"; (b) even if the initial traffic stop was proper, Jones's "arrest for violation of the Sioux City paraphernalia law was without probable cause and [she] was entitled to a ruling on that issue"; and (c) her counsel's ineffective assistance constituted good cause for her failure to file a timely suppression motion. Application for Further Review in *State v. Jones*, S. Ct. No. 05-0316 (Iowa Sup. Ct. Feb. 10, 2006). In this third argument, Jones asserted, in a single sentence, that because she "undoubtedly received ineffective assistance, *whether by her original counsel or [Ms. McMinn] being irrelevant to her right to relief*, she is entitled to relief[.]" *Id.* at p. 13 (emphasis added).

On March 28, 2006, the Iowa Supreme Court issued an order denying further review. *See* Habeas App. at 65. Jones did not file an application for postconviction relief. Instead, she filed the instant action, raising a single issue for review. Jones claims she "was denied effective assistance of counsel at the trial court level, resulting in denial of an otherwise meritorious suppression motion." Doc. No. 3, p. 5, ¶ 12.A. On March 6, 2008, Judge Mark W. Bennett referred the case to the undersigned [Judge Zoss] for review of the record and the preparation of a report and recommended disposition of the case. Doc. No. 28.

Doc. No. 31 (pp. 1-8).  Upon review of the record, the court adopts all of Judge Zoss's factual findings.

## II.  ANALYSIS

### A.  Standard Of Review

#### 1.  Standard of review of report and recommendation

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. LR 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation).  While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time.  *Id.*  If a party files an objection to the magistrate judge's report and recommendation, however, the district

9

court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a

10

magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous

11

standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a

clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.[1]

---

[1] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will *not* result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed

(continued...)

## 2. General standards for § 2254 relief

Section 2254 of Title 28, including § 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, govern Jones's petition. Section 2254(a) states that:

> a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution… of the United States.

28 U.S.C. § 2254(a). Jones claims in her petition that her counsels' failure to file a motion to suppress evidence obtained in violation of the Fourth Amendment constituted ineffective assistance of counsel in violation of the Sixth Amendment. More specifically, Jones maintains that her attorneys were ineffective in failing to timely file a motion to suppress for two different Fourth Amendment claims. The first claim involves the stop of the vehicle in which she was an occupant. The second claim concerns Jones's arrest for possession of drug paraphernalia. Because the Iowa Court of Appeals dealt with the first claim on its merits, but not the second, the two claims are addressed differently under Section 2254.

The first claim is governed by Section 2254(d).

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable

---

[1] (…continued)
for plain error.' We review the district court's legal conclusions de novo." (citation omitted)).

14

> application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1-2)). An "unreasonable application" of federal law by a state court can occur in two ways: (1) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) where "the state court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. It is not enough that the state court applied clearly established federal law erroneously or incorrectly-the application must additionally be unreasonable. *Id.* at 411; *see Bell v. Cone*, 535 U.S. 685, 694 (2002) ("an unreasonable application is different from an incorrect one."). Stated differently, a federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent. *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

Jones's first Fourth Amendment claim, concerning the traffic stop, specifically falls under the AEDPA standard articulated in 28 U.S.C. § 2254(d)(2) because the Iowa Court of Appeals considered the constitutionality of the traffic stop on its merits. As a result, the State court's findings will only be overturned if the court applied an unreasonable application of United States Supreme Court precedent.

The Iowa Court of Appeals did not consider the second Fourth Amendment issue underlying the ineffective assistance of counsel claim, the constitutionality of the arrest, on its merits. The pre-AEDPA de novo standard of review is applied to mixed questions of law and fact when the claim was not adjudicated on the merits in state court. *Robinson*

*v. Crist*, 278 F.3rd 862, 865 (8th Cir. 2002) (citing *Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir. 2001)); see *Clemons v. Luebbers*, 381 F. 3d 744, 757 (8th Cir. 2004).

Since the second underlying Fourth Amendment claim is not governed by 28 U.S.C. § 2254(d), the pre-AEDPA de novo standard of review should be applied to the claim.

A petitioner must satisfy certain procedural requirements, however, in order to preserve issues or claims for federal review, regardless of whether they fall under 28 U.S.C. § 2254(d). As the Eighth Circuit Court of Appeals has explained previously:

> Before a federal court may reach the merits of a claim in a habeas petition by a state prisoner, it "must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court." *See Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*per curiam*); *McCall v. Benson*, 114 F.3d 754, 757 (9th Cir. 1997). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *McCall*, 114 F.3d at 757 (internal quotations omitted).

*Frey v. Schuetzle*, 151 F.3d 893, 897 (8th Cir. 1998); *see Sweet v. Delo*, 125 F.3d 1144, 1153 (8th Cir. 1997) ("Raising a state-law claim in state court that is merely similar to the constitutional claim later pressed in a habeas action is insufficient to preserve the latter for federal review.") (citing *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (*en banc*); *Gray v. Netherland*, 518 U.S. 152, 162 (1996) (holding that general appeal to broad concept such as due process is insufficient presentation of the issue to state court)).

The court also recognizes that the United State Supreme Court has held that federal courts should not grant habeas review "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim...." *Stone v. Powell*, 428 U.S. 465, 482

(1976). However, the Court later stated that this prohibition did not extend to ineffective assistance of counsel claims, even when the claim of ineffective assistance dealt with counsel's failure to properly file a motion to suppress evidence based on the Fourth Amendment. *Kimmelman v. Morrison*, 477 U.S. 365, 380 (1986).

### B. Objections To Report And Recommendation

Judge Zoss's Report and Recommendation recommends that the court grant habeas relief. It explains that petitioner Jones has properly exhausted her ineffective assistance of counsel claim regarding both attorneys' failure to file a timely motion to suppress. Judge Zoss then finds that Jones was subject to ineffective assistance of counsel by her attorneys' failure to timely file a motion to suppress regarding the Fourth Amendment claim related to her unlawful arrest. As a result, Judge Zoss recommended that the court grant habeas relief to Jones.

The State filed three objections to Judge Zoss's Report and Recommendation. First, the State objects to Judge Zoss's finding that section 2254(d) is inapplicable to the probable cause to arrest issue. Second, the State objects to Judge Zoss's finding that the State has waived exhaustion or procedural default. And third, the State objects to Judge Zoss's analysis and conclusion that the officer who arrested Jones lacked probable cause to arrest her and that habeas corpus relief should, therefore, be granted. The court will address the State's objections in turn.

### 1. Adjudication on the Merits of the Probable Cause to Arrest Claim

The State's first objection is to Judge Zoss's finding that there was not an adjudication on the merits of the probable cause to arrest issue, which led to his conclusion that the pre-AEDPA standard of de novo review is appropriate. Doc. No. 32. The State argues that the Iowa Court of Appeals did adjudicate the issue on the merits. It reasons that the court of appeals's failure to discuss the issue amounts to a summary disposition of

the issue. The State relies on the Fifth Circuit Court of Appeals's three factors for determining whether there was an adjudication on the merits. Doc. No. 32 (quoting *Singleton v. Johnson*, 178 F.3rd 381, 384 (5th Cir. 1999)). Judge Zoss found, however, that because nothing was said about the issue, "either in its recitation of the case's procedural and factual history or in the court's discussion on the merits[,]" the issue had not been adjudicated on the merits. *Id.*

The United States Supreme Court has not yet provided precise guidance concerning what a State court must do to adjudicate a claim on its merits. The Eighth Circuit Court of Appeals has explained that:

> [o]ne thing is clear—no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits.

*Brown v. Luebbers*, 371 F.3d 458, 461 (8th Cir. 2004), *cert. denied*, 543 U.S. 1189 (2005). Instead, a court "must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court." *Id.* The Eighth Circuit Court of Appeals has clearly stated that "the summary nature" of an opinion does not remove the need to apply the stricter, more deferential, standard. *Weaver v. Bowersox*, 438 F.3d 832, 839; *see also Brown* at 462 and *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir 1999).

The court rejects the State's argument that a state appellate court's failure to take up an issue raised by the appellant or appellee requires the inference that the state court has summarily rejected it. As a practical matter, an appellate court's failure to take up a claim put forth by a party will often lead to a rejection of that claim. However, there is no bright-line rule stating that the practical effect of the state court's opinion is

determinative on whether the claim was adjudicated on its merits. Instead, the Eighth Circuit Court of Appeals stated in *Brown* that the lack of bright-line rules was proper, "given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised." *Brown* at 461. The Iowa Court of Appeals made divining its thought process impossible by failing to say anything at all about the issue. When a court fails to reference an issue in both its recitation of the case's procedural and factual history of the case and in its discussion of the case, it totally loses the ability to communicate its thought process to a reviewing court. The reviewing court also properly loses its concerns of comity to the State court on the particular issue. Therefore, the court holds that the Iowa Court of Appeals and Iowa Supreme Court, by failing to reference the probable cause to arrest issue, did not adjudicate the issue on its merits and the court should apply the pre-AEDPA de novo standard of review to the issue.[2] The State's objection on this issue will be denied.

### 2. *Procedural default and the exhaustion requirement*

The State's second objection is to Judge Zoss's finding that the State has expressly waived the question of exhaustion or procedural default. The State argues that Jones did not properly exhaust her Sixth Amendment claim of ineffective assistance of counsel against her second attorney, Ms. McMinn, in state court. Judge Zoss found that the State waived exhaustion in Respondent's Merits Brief in Resistance to § 2254 Petition when it stated that "as a practical matter, Jones's default in this regard does not materially alter this Court's review process because the critical question here is ultimately the same—whether

---

[2] John D. Ackerman, Judge of the Third Judicial District of Iowa, discussed the merits of the claim, but it was after he disposed of the motion to suppress on procedural grounds, finding that it was time-barred. Doc. No. 20-2.

one or both of her attorneys were ineffective in handling suppression matters under a *Strickland v. Washington* standard (citations omitted)." Doc. No. 20-1. The State did explain, however, that exhaustion of a claim occurs when there is "fair presentation," which "requires a petitioner to raise the same factual grounds and legal theories in state proceedings." *Id (citations omitted)*.

"A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). This fundamental requirement, that a petitioner first present his claims to the state court, is rooted in the belief that it would be unjust for a federal court to upset a state court conviction without providing the state courts an opportunity to correct the constitutional violation. "Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004).

In this case, Jones must show that she exhausted the issue of whether either of her attorneys had been ineffective due to their failure to file a timely motion to suppress. In her appellate brief, the petitioner raised the issue of whether her Fourth Amendment rights were violated due to the traffic stop and her arrest, and she asserted that her previous attorney, Heidi Rouse, had provided ineffective assistance of counsel in failing to file a motion to suppress. *See* Doc. No. 6. The State also raised the constitutionality of the traffic stop and arrest in its responsive brief. *See* Doc. No. 6. However, the State suggested that McMinn had also provided ineffective assistance of counsel when it stated that, "as Jones' [sic] second attorney she presumably had access to the same minutes and police reports." *Id*. McMinn then responded to this accusation in Jones's reply brief by stating "which of her [Jones's] two counsel might have been ineffective are [sic]

irrelevant—the issue from Appellant's perspective is the nature of the reason for her procedural default, not which counsel was ultimately responsible for it." Doc. No. 6. The Court of Appeals even recognized the issue when it stated in its opinion that "[r]egardless of whether either prior or current counsel for Jones breached an essential duty to file a timely motion to suppress the evidence obtained following the stop of the vehicle... we cannot discern any prejudice that Jones suffered." Doc. No. 20-2. In addition, in Jones's application for further review with the Supreme Court of Iowa, and after Jones brought up the Fourth Amendment issues related to the traffic stop and arrest, she similarly stated that "[g]iven the fact that the Applicant undoubtedly received ineffective assistance, whether by her original counsel or the undersigned [Ms. McMinn] being irrelevant to her right to relief, she is entitled to relief at the earliest possible time." Doc. No. 6.

Ms. McMinn's statements in Jones's reply brief and application for further review with the Supreme Court of Iowa are tantamount to her throwing herself on the proverbial grenade in order to protect her client. Although she was partially responsible for pulling out the pin by failing to file the motion to suppress, she adequately communicated to the court that she may be to blame. The Iowa Court of Appeals, by recognizing that Ms. McMinn might have breached her duty to file the motion to suppress, also recognized that the issue had been raised. The State argued in Respondent's Merits Brief in Resistance to § 2254 Petition that the Court of Appeals's statement is "arguably dicta because there was no factual record of McMinn's reasons for the late filing before the trial court." Doc. No. 20-1. However, the State also recognized in the same brief that "fair presentation requires a *petitioner* to raise the same factual grounds and legal theories in the state proceeding (italics added)." *Id.* Regardless of whether the Court of Appeals's statement is dicta or not, its reference to the issue provides support to Jones's claim that she presented the issue to the Court of Appeals. Because Ms. McMinn, in Jones's reply brief and petition for

further review to the Supreme Court of Iowa, admitted that she may have provided ineffective assistance of counsel, and because the Iowa Court of Appeals recognized the same, the court finds that Jones properly presented the issue of Ms. McMinn's ineffective assistance of counsel to the Iowa Court of Appeals and therefore has exhausted the issue. Thus, the issue has not been procedurally defaulted. The State's objection on this issue will be denied.

### 3. Ineffective assistance of counsel analysis

The State's third objection is to Judge Zoss's analysis and conclusion that Officer Wagner lacked probable cause to arrest Jones and to the resulting recommendation that habeas corpus relief be granted on that ground. Judge Zoss discussed both Fourth Amendment claims related to Jones's motion to suppress, the legality of the traffic stop and the legality of the arrest, but the State only objected to the analysis of the arrest because the stop was found to be legal. Despite the lack of objection regarding the validity of the traffic stop, the court will address both issues.

### a. Validity of the traffic stop

Judge Zoss found that the traffic stop was legal and, as a result, the State did not object to the finding. Although Jones strongly contested in State proceedings whether there was probable cause for the traffic stop (*see* Doc. No. 20-2), she did not strongly contest this issue in her Merits Brief before this court. Doc. No. 19. Applying the more deferential AEDPA standard of review found in 2254(d)(2), Judge Zoss found that the Iowa Court of Appeals had not unreasonably applied Supreme Court precedent when it found a lack of prejudice under *Strickland*—the Court of Appeals found that Jones was not prejudiced by her attorneys' failure to file a motion to suppress in relation to the traffic stop because such a motion would not have been meritorious. Doc. No. 20-2.

Judge Zoss properly determined that Jones has failed to meet her burden to show that she was prejudiced by her attorneys' failure to file a timely motion to suppress in relation to the traffic stop. As the Jones court and Judge Zoss's Report and Recommendation recognize, "an officer can conduct a traffic stop of a vehicle for any traffic violation, however minor...." Doc. No. 31 (citations omitted). Jones does not strongly contest this issue in her brief as she only recognizes that the Iowa Court of Appeals analyzed the issue. See Doc. No. 19. Since Jones ultimately prevailed in the Report and Recommendation, she has not filed an objection on this issue. Although this court may have reached a different conclusion about the constitutionality of the stop had this issue been reviewed de novo, the court finds that the Iowa Court of Appeals did not unreasonably apply federal law in finding that the traffic stop was legal.

**b.    *Validity of the arrest***

The State's third objection, again, is that Judge Zoss's analysis and conclusion regarding whether Jones's arresting officer lacked probable cause to arrest Jones. Because he was found to have lacked probable cause, the court found Jones was prejudiced by her attorneys' failure to file a timely motion to suppress. The State argues that "[e]ven applying a de novo standard of review to the probable cause to arrest issue," Judge Zoss should not have found that Officer Wagner, Jones's arresting officer, lacked probable cause to make the arrest. Doc. No. 32. This court will make precisely that review.

As stated above, because the Iowa Court of Appeals did not decide on its merits whether Jones's attorneys' failure to file a motion to suppress evidence flowing from her arrest was ineffective assistance of counsel, the court will review this claim de novo. The Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established:  post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's

performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

### i. *Deficient performance*.

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel,

the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

The alleged deficient performance in this case was Jones's attorneys' failure to file a timely motion to suppress in regard to the evidence flowing from her arrest. The delay in filing the motion was not due to strategic considerations. Instead, each of Jones's two attorneys, Heidi Rouse and Martha McMinn, had other reasons. Ms. Rouse first asked the court to continue the pretrial deadlines in the case because the defense had "made a request for lab reports and videotaped evidence that is not yet available" and Ms. Rouse explained that she had an upcoming surgery that would make her unavailable for two to three weeks. Doc. No. 20-2. Ms. Rouse's second request for a continuance of the pretrial deadlines was due to her needing "additional time to determine whether or not to conduct depositions, as well as to schedule [the] same with the State" and to determine whether to file any motions. *Id.* Without Jones having filed a motion to suppress, Ms. McMinn appeared as her new attorney on December 8, 2003. *Id.* At that time, Ms. Rouse had extended the pretrial deadlines to January 2, 2004. *Id.* However, Ms. McMinn waited to file the motion to suppress until February 11, 2004—she filed the motion even though she had missed the deadline by more than thirty days. Doc. No. 6.

Although Ms. Rouse's actions were arguably reasonable under the circumstances, Ms. McMinn's actions did not fall within the range of reasonable professional assistance under *Strickland*. Ms. McMinn took on Jones's case less than thirty days before the pretrial deadlines. However, pretrial deadlines in Iowa are initially set only forty days after arraignment. Iowa R. Crim. P. 211(4). Even if Jones had been arraigned on December 8, 2003, the day Ms. McMinn appeared as her counsel, the February 10, 2004 motion to suppress would still have been untimely, as over forty days had lapsed. In addition, the court had been generous in granting previous continuances and an additional

continuance was not even attempted by Ms. McMinn. This fact, along with the fact that Ms. McMinn actually attempted to file a motion to suppress over thirty days after the deadline, evidences that Ms. McMinn was completely unaware of the deadline. She either forgot about the deadline or unreasonably assumed that the Iowa District Court would excuse the untimeliness of her motion. There is no indication that Ms. McMinn's delay in filing the motion was due to strategy and the delay did not fall within the range of reasonable professional assistance. Therefore, the court finds that at least Ms. McMinn's performance was deficient.

### ii. *Prejudice*.

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

Applying *Strickland* and progeny, Jones must show that there was a reasonable probability that the motion to suppress the evidence that flowed from her arrest would have

been granted had it been timely filed in order to show prejudice. As a result, this court must evaluate the probable outcome of such a suppression hearing in state court.

Jones was subject to a warrantless arrest, which shifts the burden in the suppression hearing to the state to prove an exception to the warrant requirement by a preponderance of the evidence. *State v. Baker*, 262 N.W.2d 538, 546 (1978) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *Bettuo v. Pelton*, 260 N.W.2d 423, 425 (Iowa 1977); *State v. Ahern*, 227 N.W.2d 164, 165 (1975)); *see* also *State v. Olsen*, 315 N.W.2d. 1 (1982). Iowa law has codified certain exceptions to the warrant requirement, and the two potentially applicable exceptions are found in the Iowa Code. First, a peace officer can make a warrantless arrest "where a public offense has in fact been committed, and the peace officer has reasonable grounds for believing that the person to be arrested has committed it." IOWA CODE § 804.7(2). And second, a peace officer can make a warrantless arrest "where the peace officer has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it." IOWA CODE § 804.7(3). Reasonable ground or grounds have been "equated with the federal constitutional standard of probable cause necessary to a warrantless arrest." *U.S. v. Berryhill*, 466 F.2d 621 (8th Cir., 1972); *See* also *Kraft v. City of Betterndorf*, 359 N.W.2d. 466 (1984); *Children v. Burton*, 331 N.W. 2d. 673 (1983).

An evaluation of the elements of each code section, Iowa Code §§ 804.7(2) and 804.7(3), demonstrates that Jones's arrest is governed by Iowa Code § 804.7(2). Jones violated an ordinance under the Sioux City Municipal Code (SCMC) that is considered a simple misdemeanor[3] and that constitutes a public offense.[4] Since an indictable offense

---

[3] The penalty for the drug paraphernalia section is governed by SCMC § 8.20.070,

(continued...)

is "an offense other than a simple misdemeanor," (IOWA CODE § 801.4(8)), possession of drug paraphernalia under the SCMC[5] is not an indictable offense. Because § 804.7(2) governs Jones's warrantless arrest, the arrest's validity will be based on the State's ability to prove the elements of the section—the State would need to prove that the officer had probable cause to believe the elements of the SCMC ordinance were met and that a violation of the ordinance actually occurred. IOWA CODE § 804.7(2).

In determining whether probable cause exists to make a warrantless arrest, a court must consider whether, based on the totality of the circumstances, the facts would lead a reasonable person to believe that the individual arrested has committed or is committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Torres-Lona*, 491 F.3d 750, 756 (8th Cir. 2007); *United States v. Castro-Gaxiola*, 479 F.3d 579, 584 (8th Cir. 2007); *United States v. Martinez*, 462 F.3d 903, 908 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1502 (2007) ; *Engesser v. Dooley*, 457 F.3d 731, 740 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1284 (2007); *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir.), *cert.*

---

[3](...continued)
which states that "[a]ny person or corporation violating any provision, section or paragraph of this ordinance shall be punished according to the provisions of Section 1.04.100." SCMC § 8.20.070. Section 1.04.100 states that "[w]henever in this code, any act is prohibited, declared unlawful or an offense or a misdemeanor, or whenever the failure to do any act is declared to be unlawful, where no specific penalty is provided therefore, the violator of any such provision of this code shall, upon conviction, be guilty of a simple misdemeanor and shall be punished by a fine of at least $65.00 but not exceeding the sum of $500.00, and/or by imprisonment not to exceed 30 days." SCMC § 1.04.100.1.

[4] "A 'public offense' is that which is prohibited by statute and is punishable by fine or imprisonment." *State v. Ceron*, 573 N.W.2d 587, 589 (1997). An ordinance, for which there is a criminal penalty, is considered a statute. *Id.*

[5] The SCMC's drug paraphernalia ordinance is defined in SCMC § 8.20.030.

*denied*, 127 S. Ct. 409 (2006); *United States v. Zavala*, 427 F.3d 562, 565 (8th Cir. 2005); *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1804 (2006); *United States v. Kelly*, 329 F.3d 624, 628 (8th Cir. 2003); *United States v. Oropesa*, 316 F.3d 762, 768 (8th Cir. 2003). In reviewing a law enforcement officer's determination of probable cause, the court must "give due weight to the inferences that can be drawn from the officers' experience." *Robertson*, 439 F.3d at 939 (citing *United States v. Wilson*, 964 F.2d 807, 809 (8th Cir. 1992)); *Mendoza*, 421 F.3d at 667 ("In determining whether probable cause exists, we recognize that the police possess specialized law enforcement experience and thus may 'draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous.'") (quoting *United States v. Caves*, 890 F.2d 87, 93 (8th Cir. 1989)). Moreover, the Eighth Circuit Court of Appeals has instructed that: "[t]here need only be a 'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity.'" *Torres-Lona*, 491 F.3d 750, 756 (8th Cir. 2007) (quoting *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005)).

The applicable ordinance, the SCMC drug paraphernalia ordinance, defines "drug paraphernalia" as "all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, concealing, containing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance...." SCMC § 8.20.030. The ordinance specifically includes "[s]cales and balances used, intended for use, or designed for use in weighing or measuring controlled substances." SCMC § 8.20.030.5.

The SCMC also provides "determining factors," which are intended to "be considered in addition to all other logically relevant factors." *Id*. The factors are the following:

> 1. Statements. Statements by an owner or by anyone in control of the object concerning its use.
> 2. Proximity to Violation. The proximity of the object, in time and space, to a direct violation of the Uniform Controlled Substances Act, Chapter 124 of the Code of Iowa.
> 3. Proximity to Substances. The proximity of the object to controlled substances.
> 4. Residue. The existence of any residue of controlled substances on the object.
> 5. Evidence of Intent. Direct or circumstantial evidence of the intent of an owner or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of the Uniform Controlled Substances Act, Chapter 124 of the Code of Iowa.
> 6. Innocence of an Owner. The innocence of an owner, or of anyone in control of the object, as to a direct violation of the Uniform Controlled Substances Act, Chapter 124 of the Code of Iowa, should not prevent a finding that the object is used, intended for use, or designed for use as drug paraphernalia.
> 7. Instructions. Instructions, oral or written, provided with the object concerning its use.
> 8. Descriptive Materials. Descriptive materials accompanying the object which explain or depict its use.
> 9. Advertising. National and local advertising concerning its use.
> 10. Displayed. The manner in which the object is displayed for sale.
> 11. Licensed Distributor or Dealer. Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products.

12. Prior Convictions. Prior convictions, if any, of any owner or of anyone in control of the object under any State or Federal law relating to any controlled substances.

13. Sales Ratios. Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise.

14. Legitimate Uses. The existence and scope of legitimate uses for the object in the community.

15. Expert Testimony. Expert testimony concerning its use.

*Id.* Judge Zoss made the following factual findings in relation to the arresting officer's knowledge at the time of Jones's arrest:

On August 22, 2003, Officer Wagner was on routine patrol in a police vehicle in Sioux City, Iowa. He saw a vehicle that he observed "had a cracked windshield that went directly within the driver's line of vision in comparison [with] where the driver was sitting in the vehicle." Doc. No. 6(f), Transcript of Suppression Hearing, at p. 9. He stopped the vehicle for the cracked windshield, informed the driver why she had been stopped, and obtained identification from the driver and Jones, the passenger. *Id.* at pp. 9, 12. The driver, Bobbi Jo Linehan, did not have a driver's license, and the officer returned to his patrol car "to run checks on both the driver and the passenger[.]" *Id.* at p. 13. He learned Linehan had an active warrant from Illinois, on a theft charge. In addition, he learned Linehan did not have a current driver's license. Officer Wagner made the decision to arrest Linehan. *Id.* at p. 17. He effected the arrest, patted Linehan down, and placed her in his patrol car. *Id.* at p. 18.

After he arrested Linehan, Officer Wagner "approached the vehicle again and asked the front seat passenger [Jones] to step out of the vehicle." *Id.* She complied, and the officer testified that after Jones got out of the vehicle, the following events occurred:

A [By Officer Wagner]  After having the defendant step out of the car, we had some brief conversations as to whether she had anything illegal on her or not.  She stated she didn't.  She did not want me to search her necessarily, but she did empty her pockets for me.

Q [By Assistant Woodbury County Attorney Mark Campbell] And did you find anything illegal on the defendant at that time?

A No, I did not.

Q What happened then?

A At that time I had her step away from the vehicle due to the fact that I was going to search the vehicle incident to the arrest of the driver.  And I proceeded to search the vehicle at that time.

Q And did you find anything of interest in your search of the vehicle incident to the arrest of the driver?

A Yes, I did.

Q What did you find?

A I found a – what I would call a gram scale which could also be referred to as a mail scale.  Very small, silver object, commonly used to weigh marijuana by marijuana users and dealers.

Q And from your training and experience, you recognized that the scale was of the type that would be used by drug users to weigh their drugs?

A Yes.

Q Did you have any conversation with the driver or the defendant regarding the gram scale?

A     Yes, I did.

.   .   .

Q     So what conversation did you have with the driver regarding the gram scale?

A     I believe the sequence of events was I asked the passenger about the scale first then I proceeded to ask the driver. Upon asking the driver about the scale, I showed it to her. Didn't ask any question.

THE COURT: Showed it to who?

THE WITNESS: Showed it to the driver or Bobby [sic] Jo, who was under arrest, and, um, asked her what it was. She explained to me that she stated it looked like a scale used to weigh marijuana.

MR. CAMPBELL: And that was the driver's opinion of what the scale looked like?

THE WITNESS: That was her opinion, correct.

Q     [By Mr. Campbell] And did you have any conversation with the defendant regarding what she thought of the scale?

A     Yes, I did.

Q     And what did the defendant indicate?

A     The defendant indicated that – again this was Misty Jones – indicated that the scale was used by her father, I believe, to weigh food.

Q     Now, based upon your training and experience and you're [sic] familiarity with the scale, was the defendant's explanation credible?

A     No.

33

Q    What did you decide to do then?

A    I did decide to interview further to establish
ownership of the scale. Both subjects inside the
vehicle denied ownership of this scale. It was in
a position within the vehicle to be placed there
by either subject so I made the decision to arrest
and charge both subjects with possession of drug
paraphernalia.

Q    And possession of drug paraphernalia would be
a violation of city ordinance?

A    That's correct.

On cross-examination by Ms. McMinn, Officer Wagner
stated he had met Jones "on one separate occasion" prior to
the date of the traffic stop; however, he did not recognize the
vehicle as a car associated with Jones, and he did not
recognize Jones at the time of the traffic stop and her arrest.
*Id.* at p. 23.

To summarize, at the time of Jones's arrest, Officer
Wagner knew the following:
▸    Jones was a passenger in a vehicle stopped for a
windshield violation.
▸    The driver of the vehicle had an outstanding warrant on
a theft charge.
▸    A small scale was found in the vehicle.
▸    The scale was in a location where either Jones or the
driver could have put it.
▸    Both the driver and Jones denied ownership of the
scale.
▸    The driver indicated the scale appeared to be like a
scale used to weigh marijuana.
▸    Jones stated her father used the scale to weigh food.

At the scene of the traffic stop, no contraband of any kind was located in the vehicle, or on the persons of Jones or the vehicle's driver.

The State also claims Officer Wagner "knew the vehicle did not belong to Jones, Jones'[s] father, or Ms. Line[]han." Doc. No. 20 at 24-25. In support of this statement, the State cites the Suppression Transcript, Doc. No. 6(f), at pages 17 and 32-33. The court has reviewed the entire suppression transcript and finds Officer Wagner never testified to anything at all regarding his knowledge of the vehicle's ownership. He testified he ran "checks on both the driver and the passenger due to the fact that the passenger had provided [him] with an ID for locals and also for driver's license and also for NCIC." Doc. No. 6 at p. 13. He testified the records check indicated the driver "did not currently have a driver's license and also came back that she had an NCIC warrant . . . out of Illinois for theft." He also did not "recall her having any proof of insurance for the vehicle." *Id.* at p. 17. The officer never testified he made a determination at the time of the traffic stop regarding who owned the vehicle. Pages 32-33 of the transcript, cited by the State, contain testimony from a Michael Swingen, who apparently owned the vehicle; however, nothing in the record suggests Officer Wagner knew who owned the vehicle at the time. "Facts that occur or come to light subsequent to the arrest are irrelevant to a determination of whether probable cause existed at the time of arrest." *Children v. Burton*, 331 N.W.2d 673, 680 (Iowa 1983) (citing *Henry v. United States*, 361 U.S. 98, 103, 80 S. Ct. 168, 171, 4 L. Ed. 2d 134, 139 (1959)).

Doc. No. 32.

The State argues that the officer was "experienced and he immediately recognized the small, gram scale as drug paraphernalia." Doc. No. 32. However, there is no testimony regarding why the scale itself is any different from other food or mail scales.

The officer testified that the scale *could* be used to weigh drugs. However, this observation does not differentiate the scale from every other food or mail scale. The officer undoubtedly has witnessed similar scales being used for drug weighing. However, from the record it is clear that the officer's assumptions about use of the scale could only have come from the circumstances surrounding the scale and not from the physical attributes of the scale.

The record, however, is also devoid of any circumstances that would lead a reasonable person to believe that the scale was being used to weigh drugs. The State claims that the arresting officer's experience should be considered by the court when determining whether he could reasonably reject Jones's explanation of one legitimate use of the scale. Doc. No. 32. In other words, the State is claiming that the officer's belief that Jones was lying about the use of a scale provided probable cause that the scale was being used in violation of the Sioux City drug paraphernalia ordinance.

The Supreme Court of Iowa addressed the State's burden to establish probable cause in a somewhat similar fact pattern in *State v. Ceron*. In *Ceron*, the court evaluated whether an officer had probable cause to arrest an individual for possession of drug paraphernalia for possessing cigarette rolling papers. *State v. Ceron*, 573 N.W.2d 587, 593 (1997). The court explained that an officer "knew that cigarette rolling papers are used to roll marijuana cigarettes." *Id.* However, the court noted that possession of cigarette rolling papers, by itself, did not provide an officer probable cause to arrest the possessor of the papers under the applicable drug paraphernalia statute. *Id.* But in *Ceron*, the officer also had knowledge of the defendant's previous involvement with drug activity and witnessed the defendant's red watery eyes, which the court explained signaled to an experienced police officer that the defendant had possibly been using drugs. *Id.*

The arresting officer in *Ceron* had more, though not much more, than just cigarette rolling papers to support his arrest. However, the additional information, the officer's knowledge of the defendant's past convictions and observations of the signs of recent drug use, made the difference between the court finding, or not finding, probable cause. *Ceron* leaves unanswered whether the red watery eyes without the criminal background would have been enough for a finding of probable cause, and vice versa. In Jones's case, however, there is no additional evidence that compares to either red watery eyes *or* history of drug activity. Instead, the officer simply had an asserted explanation for the possession of the scale, which the officer disbelieved. Even if the officer did not have a legitimate explanation for the scale, it still left him completely without reason to believe the scale was specifically used in violation of the drug paraphernalia statute—there are a lot of reasons an individual may provide a false explanation for possessing a scale, such as failing to trust police officers, hesitancy to disclose the actual use of the scale, or shyness concerning an embarrassing but legal use for the scale. Therefore, upon this record, the motion to suppress the evidence flowing from the arrest would have been granted because the officer did not have the requisite level of suspicion to fulfill the requirements of Iowa Code § 804.7(2).

The evidence that flowed from Jones's arrest was used in a bench trial to convict her of the charges for which she is being detained by the state. However, this court finds that the evidence would have been suppressed had a timely motion to suppress been filed. Therefore, the undersigned agrees with Judge Zoss's finding that

> [h]ad the suppression motion been filed timely, it would have been granted and the evidence flowing from Jones's arrest would have been suppressed, leading to a dismissal of the charges against her. The deficient performance of Jones's

> attorneys resulted in proceedings that were fundamentally
> unfair, rendering the result of the trial unreliable.

Doc. No. 31. Jones has satisfied her burden of proving both *Strickland* prongs. Therefore, the State's objection on this issue will be denied.

## IV. CONCLUSION

The court finds that Jones's attorneys' failure to timely file a motion to suppress in relation to the evidence flowing from Jones's arrest constituted ineffective assistance of counsel, and Jones's detention is in violation of her Sixth Amendment rights. Jones has threaded the post-AEDPA habeas corpus needle by both properly presenting her ineffective assistance claim to the Iowa Court of Appeals and Supreme Court of Iowa and having neither of them decide the underlying Fourth Amendment claim regarding her arrest on its merits.[6] Accordingly, the State's objections are denied, and Jones's petition for writ of habeas corpus is granted. However, execution of the writ of habeas will be stayed for sixty (60) days from the date of this order to permit the State of Iowa to provide Jones with a new trial consistent with this order or to decide not to prosecute Jones again. Of course, since Jones proved that the use of the evidence flowing from her arrest deprived her of a fair trial, if she is prosecuted then she "will be entitled to retrial without the challenged evidence." *Kimmelman*, 477 U.S. at 382. If the petitioner is not provided with a new trial within the time specified, the writ will issue, and the respondent shall release Jones.

---

[6]As stated above, Judge Ackerman discussed the merits of the claim but disposed of it on procedural grounds.

**IT IS SO ORDERED.**

**DATED** this 4th day of September, 2008.

Mark W. Bennett

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA